# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENHANCED SECURITY RESEARCH, LLC,<br>and SECURITY RESEARCH HOLDINGS LLC,<br><br><br>Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.;<br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION;<br>CHECK POINT SOFTWARE<br>TECHNOLOGIES, LTD.;<br>CHECK POINT SOFTWARE<br>TECHNOLOGIES, INC.; SONICWALL, INC.;<br>3COM CORPORATION;<br>NOKIA CORPORATION;<br>NOKIA, INC.;<br>FORTINET, INC.; AND<br>SOURCEFIRE, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Enhanced Security Research, LLC ("ESR") and Security Research Holdings

LLC ("SRH") for their Complaint against Defendants Cisco Systems, Inc. ("Cisco");

International Business Machines Corporation ("IBM"); Check Point Software Technologies, Ltd.

("Check Point, Ltd."); Check Point Software Technologies, Inc. ("Check Point"); SonicWALL,

Inc. ("SonicWALL"); 3Com Corporation ("3Com"); Nokia Corporation ("Nokia Corp."); Nokia,

Inc. ("Nokia"); Fortinet, Inc. ("Fortinet"); and Sourcefire, Inc. ("Sourcefire") (collectively

referred to as "the Defendants"), state and allege as follows:

## THE PARTIES

1.      Enhanced Security Research, LLC ("ESR") is a Texas Limited Liability Company having a principal place of business of 2341 Spaulding Avenue, Berkeley, CA 94703.

2.      Security Research Holdings LLC ("SRH") is a Delaware limited liability company having a registered office at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

3.      Upon information and belief, Defendant Cisco Systems, Inc. ("Cisco") is a California corporation having its principal place of business at 170 W. Tasman Drive, Building 10, San Jose, CA 95134.

4.      Upon information and belief, Defendant International Business Machines Corporation ("IBM") is a New York corporation having its principal place of business at 1 New Orchard Road, Armonk, NY 10504.

5.      Upon information and belief, Defendant Check Point Software Technologies, Ltd. ("Check Point, Ltd.") is an Israeli corporation having its principal place of business at 5 Ha'Solelim Street, Tel Aviv, Israel 67897.

6.      Upon information and belief, Defendant Check Point Software Technologies, Inc. ("Check Point") is a Delaware corporation having its principal place of business at 800 Bridge Parkway, Redwood City, CA 94065. Upon information and belief, Check Point, Ltd. is the parent company of Check Point.

7.      Upon information and belief, Defendant SonicWALL, Inc. ("SonicWALL") is a California corporation having its principal place of business at 1143 Borregas Avenue, Sunnyvale, CA 94089.

8.      Upon information and belief, Defendant 3Com Corporation ("3Com") is a Delaware corporation having its principal place of business at 350 Campus Drive, Marlborough,

MA 01752-3064. Upon information and belief, Tipping Point Technologies, Inc. ("Tipping Point") is a division of 3Com.

9.      Upon information and belief, Defendant Nokia Corporation ("Nokia Corp.") is a Finnish corporation having its principal place of business at Keilalahdentie 2-4, P.O. Box 226, Espoo Fin-00045, Finland.

10.     Upon information and belief, Defendant Nokia, Inc. ("Nokia") is a Delaware corporation having its principal place of business at 102 Corporate Park Drive, White Plains, NY 10604. Upon information and belief, Nokia Corp. is the parent company of Nokia.

11.     Upon information and belief, Defendant Fortinet, Inc. ("Fortinet") is a Delaware corporation having its principal place of business at 10980 Kifer Road, Sunnyvale, CA 94085.

12.     Upon information and belief, Defendant Sourcefire, Inc. ("Sourcefire") is a Delaware corporation having its principal place of business at 9770 Patuxent Woods Drive, Columbia, MD 21046.

## JURISDICTION AND VENUE

13.     This is a patent infringement action arising under the Acts of Congress relating to patents, including Title 35 U.S.C. §271 and §§281-285. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§1 *et seq.*

14.     Personal jurisdiction over the Defendants comports with the United States Constitution because each Defendant has minimum contacts within the District of Delaware; each Defendant has purposefully availed itself of the privileges of conducting business in the District of Delaware; each Defendant has sought protection and benefit from the laws of the state

of Delaware; each Defendant regularly conducts business within the District of Delaware; and

Plaintiffs' causes of action arise, at least in part, from the Defendants' business contacts and

from Defendants' other activities in the District of Delaware.

15.     Venue is proper in this federal district pursuant to 28 U.S.C. §§1391(b)-(c) and

1400(b) in that the Defendants have done business in this District, have committed acts of

infringement in this District, and continue to commit acts of infringement in this District,

entitling Plaintiffs to relief. More specifically, each Defendant directly and/or through

intermediaries (including resellers or distributors) distributes, offers for sale, sells, and/or

advertises its products and services in the District of Delaware.

## COUNT I — INFRINGEMENT OF U.S. PATENT NO. 6,119,236

16.     On September 12, 2000, United States Patent No. 6,119, 236 ("the '236 Patent")

was duly and legally issued for inventions entitled "Intelligent Network Security Device and

Method." By virtue of assignment from Peter Shipley, the individual inventor of the '236 patent,

and Network Security Associates, a company owned by Peter Shipley, ESR acquired all rights,

title and interest in and to the '236 Patent, including the right to sue for infringement and recover

past damages. ESR has delegated to SRH the exclusive right to initiate, maintain, manage,

resolve, conclude and settle all arrangements and activities in connection with any and all

licensing or litigation or enforcement efforts relating to ESR's rights in and to the '236 patent.

ESR has standing to bring suit for infringement of the '236 Patent. SRH joins in this action to

the extent that it should be determined it is a necessary party. A true and correct copy of the

'236 Patent is attached hereto as Exhibit A.

17.     Upon information and belief, Cisco has infringed, contributed to infringement,

induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Cisco's Advanced Inspection and Prevention Security Services Module and Security Services Card for use with, for example, the Cisco Adaptive Security Appliances ("ASA") 5500 Series; the Cisco Catalyst 6500 Series Intrusion Detection System ("IDS") Services Module for use with, for example, the Cisco Catalyst 6500 Series Switch and the Cisco 7600 Series Routers; the Cisco Intrusion Prevention System ("IPS") Advanced Integrated Module ("AIM") and the Cisco IPS Network Module Enhanced ("NME") Modules for use with, for example, the Cisco 1841/2801/2811/2821/2851/3825/3845 Routers; the Cisco IPS 4200 Series Sensors; the Cisco IDSM-2 Module for use with, for example, the Cisco Catalyst 6500 Series Switch or the Cisco 7600 Series Router; and the Cisco Internetwork Operating System ("IOS") Software for use with, for example, the Cisco 800/1800/2600/2800/3700/3800/7200 Series Routers (collectively, "Cisco Network Security Appliances and Software").

18.     By way of example and without limitation, Cisco directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

19.     By way of example, and without limitation, Cisco contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell Cisco Network Security Appliances and Software because these products are configured by customers and/or end users into directly

infringing products.

20.     Cisco's acts of infringement have caused damage in an amount subject to proof at trial. Cisco's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

21.     Upon information and belief, IBM has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of IBM's Proventia MFS M/MX Series Appliances and Proventia G/GX Series Appliances (collectively, "IBM  Network Security Appliances").

22.     By way of example and without limitation, IBM directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

23.     By way of example, and without limitation, IBM contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell IBM Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

24.     IBM's acts of infringement have caused damage in an amount subject to proof at trial. IBM's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

25.     Upon information and belief, Check Point has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Check Point's IPS-1 Sensor Appliances, Check Point's IPS-1 Sensor Software, and Check Point's IP Appliances IP150/IP290/IP390/IP560/IP690/IP1280/IP2450 (collectively, "Check Point Network Security Appliances and Software") and/or selling or offering for sale Check Point Network Security Appliances and Software to other infringing entities including, but not limited to, Nokia, 3Com, and IBM.

26.     By way of example and without limitation, Check Point directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

27.     By way of example, and without limitation, Check Point contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell Check Point Network Security Appliances and Software because these products are configured by customers and/or end users into directly infringing products.

28.     Check Point's acts of infringement have caused damage in an amount subject to proof at trial. Check Point's infringement of the '236 patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

29.     Upon information and belief, SonicWALL has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of SonicWALL's E-Class NSA Series, NSA Series, Pro Series, and TZ Series Appliances (collectively, "SonicWALL Network Security Appliances").

30.     By way of example and without limitation, SonicWALL directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

31.     By way of example and without limitation, SonicWALL contributorily infringes claims of the '236 Patent when it makes, sells, offers to sell SonicWALL Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

32.     SonicWALL's acts of infringement have caused damage in an amount subject to proof at trial.  SonicWALL's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

33.     Upon information and belief, 3Com has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or

methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of 3Com's Intrusion Prevention Systems, including Tipping Point 10/210E/600E/1200E/2400E/5000E and 3Com X5 and X506 Unified Security Platforms (collectively, "3Com Network Security Appliances").

34.     By way of example and without limitation, 3Com directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

35.     By way of example, and without limitation, 3Com contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell 3Com Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

36.     3Com's acts of infringement have caused damage in an amount subject to proof at trial. 3Com's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

37.     Upon information and belief, Nokia has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but

is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Nokia's IP Security Platforms IP60/IP/260/IP290/IP390/IP560/IP690/IP1220/IP2255/IP2450 (collectively, "Nokia Network Security Appliances") and/or selling or offering for sale Nokia Network Security Appliances to other infringing entities, including but not limited to, Check Point and Sourcefire.

38.      By way of example and without limitation, Nokia directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

39.      By way of example, and without limitation, Nokia contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell Nokia Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

40.      Nokia's acts of infringement have caused damage in an amount subject to proof at trial. Nokia's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

41.      Upon information and belief, Fortinet has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Fortinet's FortiGate-5000 Series/FortiGate-3810A/FortiGate-

3600A/FortiGate-3016B/FortiGate-1000 Series/FortiGate-800/FortiGate-620B/FortiGate-500A/FortiGate-400A/FortiGate-310B/FortiGate-200A/FortiGate-111C/FortiGate-110C/FortiGate-100A/FortiGate-80C/FortiGate-80CM/FortiGate-60B/FortiGate-51B/FortiGate-50B (collectively, "Fortinet Network Security Appliances").

42.     By way of example and without limitation, Fortinet directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

43.     By way of example, and without limitation, Fortinet contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell Fortinet Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

44.     Fortinet's acts of infringement have caused damage in an amount subject to proof at trial. Fortinet's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

45.     Upon information and belief, Sourcefire has infringed, contributed to infringement, induced infringement, and continues to infringe the '236 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '236 Patent, or by contributing to the infringement of the '236 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Sourcefire 3D Sensors and IS Sensors including, but not limited to, 500/1000/2000/2100/2500/3500/4500/5800/6500/9800/9900 models; Sourcefire Intrusion

Prevention System; Sourcefire Enterprise Threat Management ("ETM"); the Snort Engine (collectively, "Sourcefire Network Security Appliances and Software") and/or selling or offering for sale Sourcefire Network Security Appliances and Software to other infringing entities including, but not limited to, Nokia, 3Com, and IBM.

46.     By way of example and without limitation, Sourcefire directly infringes claims of the '236 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

47.     By way of example, and without limitation, Sourcefire contributorily infringes claims of the '236 Patent when it makes, sells, or offers to sell Sourcefire Network Security Appliances and Software because these products are configured by customers and/or end users into directly infringing products.

48.     Sourcefire's acts of infringement have caused damage in an amount subject to proof at trial.  Sourcefire's infringement of the '236 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT II — INFRINGEMENT OF U.S. PATENT NO. 6,304,975 B1

49.     On October 16, 2001, United States Patent No. 6, 304,975 B1 ("the '975 Patent") was duly and legally issued for inventions entitled "Intelligent Network Security Device and Method." By virtue of assignment from Peter Shipley, the individual inventor of the '975 patent, and Network Security Associates, a company owned by Peter Shipley, ESR acquired all rights, title and interest in and to the '975 Patent, including the right to sue for infringement and recover past damages.  ESR has delegated to SRH the exclusive right to initiate, maintain, manage,

resolve, conclude and settle all arrangements and activities in connection with any and all licensing or litigation or enforcement efforts relating to ESR's rights in and to the '975 patent. ESR has standing to bring suit for infringement of the '975 Patent. SRH joins in this action to the extent that it should be determined it is a necessary party. A true and correct copy of the '975 Patent is attached hereto as Exhibit B.

50. Upon information and belief, Cisco has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Cisco Network Security Appliances and Software.

51. By way of example and without limitation, Cisco directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

52. By way of example, and without limitation, Cisco contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell Cisco Network Security Appliances and Software because these products are configured by customers and/or end users into directly infringing products.

53. Cisco's acts of infringement have caused damage in an amount subject to proof at trial. Cisco's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

54.     Upon information and belief, IBM has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of IBM Network Security Appliances.

55.     By way of example and without limitation, IBM directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

56.     By way of example, and without limitation, IBM contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell IBM Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

57.     IBM's acts of infringement have caused damage in an amount subject to proof at trial.  IBM's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

58.     Upon information and belief, Check Point has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under  35

U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Check Point Network Security Appliances and Software and/or selling or offering for sale Check Point Network Security Appliances and Software to other infringing entities including, but not limited to, Nokia, 3Com, and IBM.

59.     By way of example and without limitation, Check Point directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

60.     By way of example, and without limitation, Check Point contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell Check Point Network Security Appliances and Software because these products are configured by customers and/or end users into directly infringing products.

61.     Check Point's acts of infringement have caused damage in an amount subject to proof at trial.  Check Point's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

62.     Upon information and belief, SonicWALL has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present,

and future versions of SonicWALL Network Security Appliances.

63.    By way of example and without limitation, SonicWALL directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

64.    By way of example and without limitation, SonicWALL contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell SonicWALL Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

65.    SonicWALL's acts of infringement have caused damage in an amount subject to proof at trial.  SonicWALL's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

66.    Upon information and belief, 3Com has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of 3Com Network Security Appliances.

67.    By way of example and without limitation, 3Com directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

68.     By way of example, and without limitation, 3Com contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell 3Com Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

69.     3Com's acts of infringement have caused damage in an amount subject to proof at trial.  3Com's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

70.     Upon information and belief, Nokia has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Nokia Network Security Appliances and/or selling or offering for sale Nokia Network Security Appliances to other infringing entities, including but not limited to, Check Point and Sourcefire.

71.     By way of example and without limitation, Nokia directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

72.     By way of example, and without limitation, Nokia contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell Nokia Network Security Appliances because these products are configured by customers and/or end users into directly infringing

products.

73.     Nokia's acts of infringement have caused damage in an amount subject to proof at trial. Nokia's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

74.     Upon information and belief, Fortinet has infringed, contributed to infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Fortinet Network Security Appliances.

75.     By way of example and without limitation, Fortinet directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

76.     By way of example, and without limitation, Fortinet contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell Fortinet Network Security Appliances because these products are configured by customers and/or end users into directly infringing products.

77.     Fortinet's acts of infringement have caused damage in an amount subject to proof at trial. Fortinet's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

78.     Upon information and belief, Sourcefire has infringed, contributed to

infringement, induced infringement, and continues to infringe the '975 Patent by making, using, selling, or offering to sell within the United States past, present, and future versions of products and/or methods that embody one or more claims of the '975 Patent, or by contributing to the infringement of the '975 Patent, or carrying out other acts constituting infringement under 35 U.S.C. §§ 271(a), 271 (c), 271 (f), and/or 271 (g). Such infringing conduct includes, but is not limited to, making, using, selling, or offering to sell within the United States past, present, and future versions of Sourcefire Network Security Appliances and Software and/or selling or offering for sale Sourcefire Network Security Appliances and Software to other infringing entities including, but not limited to, Nokia, 3Com, and IBM.

79.     By way of example and without limitation, Sourcefire directly infringes claims of the '975 Patent when it uses intrusion detection and prevention systems in a method described in the patent claims.

80.     By way of example, and without limitation, Sourcefire contributorily infringes claims of the '975 Patent when it makes, sells, or offers to sell Sourcefire Network Security Appliances and Software because these products are configured by customers and/or end users into directly infringing products.

81.     Sourcefire's acts of infringement have caused damage in an amount subject to proof at trial.  Sourcefire's infringement of the '975 Patent will continue to cause damage, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESR and SRH request entry of judgment in their favor and

against the Defendants as follows:

a)      Declaration that the Defendants have individually and collectively infringed U.S. Patent Nos. 6,119,236 and 6,304,975 B1 under  35 U.S.C. §§ 271 (a), 271 (b), 271 (c), 271 (f), and/or 271 (g);

b)      Awarding the damages arising out of the Defendants' infringement of U.S. Patent Nos. 6,119,236 and 6,304,975 B1, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

c)      A post-judgment equitable accounting of damages for the period of infringement of U.S. Patent Nos. 6,119,236 and 6,304,975 B1 following the period of damages established by Plaintiffs at trial;

d)      Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

e)      Permanently enjoining the Defendants, their officers, agents, employees, and those acting in privity with them, from further infringement, and contributory infringement of U.S. Patent Nos. 6,119,236 and 6,304,975 B1;

f)      If a permanent injunction is not granted, a judicial determination of the conditions for future infringement or such other relief as the Court deems appropriate; and

g)      For such other costs and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ESR and SRH hereby demand a trial by jury on all issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

ASHBY & GEDDES

*Of Counsel:*

Martin R. Lueck
Sara A. Poulos
Cole M. Fauver
Julia Dayton Klein
Brenda L. Joly
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015


DATED:  August 3, 2009

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*
*Enhanced Security Research, LLC and*
*Security Research Holdings LLC*